Let's wait just a minute. Let everyone get settled. Good morning, honors. Okay, Mr Rosensky. Yes, yes. May it please the court, my name is Andrew Rosensky. What we're asking for this court to do is to vacate the district court's decision granting no attorney's fees and remand to assess the reasonableness of those fees. Well, wouldn't you, sorry, it wouldn't just be to assess the reasonableness. You're asking us to vacate remand so that he applies, district judge applies the right law in terms of deciding whether under Farrar, despite the fact that you only got a dollar, there still was a public and significant public victory. So it's not just reasonableness, right? Absolutely, your honor. That's correct of what we're seeking. In Grisham, the court held that the prevailing party's plaintiff's degrees of success is not a special circumstance that justifies a complete denial of fees. And that's exactly what the court did in this case. They did not follow the instruction of Grisham and Sanchez in this case. And what the court analyzed was what the degree of success was based on a settlement discussion in a private settlement conference with a magistrate judge. And here, the Fifth Circuit has consistently granted attorney's fees in cases where the prevailing party has achieved future deterrence and public policy changes that affects a group of underrepresented individuals, even if the damages awarded were nominal. And those cases are Peacock, Guerrero, Hopwood, Sanchez, Grisham. This is a case about a deaf prisoner. Sanchez and Grisham, they achieved injunctive relief. Correct. So we have to put those aside because you got no injunctive relief and you only got a dollar, but you asked for a lot, either $95,000 or $2 million. So the way I look at it is Farrar would normally say usually you wouldn't recover attorney's fees. But we look at various factors, and you're right. Hopwood and Peacock and Guerrero suggest a big one is the significance of the legal issue in the public. And you're saying that the district court here just said, I won't do that. Correct. They didn't even do that analysis here. They just rejected it and said, well, we think you're seeking $2 million, and the degree of success is not here, so you don't get any fees whatsoever. And the distinction between Farrar and this case is in Farrar, people couldn't understand what group of underrepresented persons were being protected. They had to search in vain for the purpose of the lawsuit, while in Peacock and Guerrero, they didn't have to search in vain. They realized that even though that the plaintiffs only got nominal damages and no injunctive relief, nothing, that a greater public interest was served. And that's exactly analogous to our case here. The deaf community is getting access to interpreting services and that they're getting access to video phones while they're in jails. It's a tighter case, though. In other words, if the district court had made the same denial but properly gone through the three factors and said there's no evidence that the fact they're getting interpreters now came from this lawsuit, then we wouldn't be reversing for abuse of discretion. Correct, Your Honor. So in this case, their own 30B6 witness, and this is in our moving brief to obtain attorney's fees. We even cite on page nine of our brief, the corporate representative of the state said, testified as follows, question, and in response to your awareness of this lawsuit, do you intend to implement any additional policies? Answer, yes, ma'am, we're going back and relooking at all of our policies regarding deaf offenders, and we've already started implementing new policies and new training to assist in doing better communication with those deaf offenders. That's our own corporate representative that said that. And at the end of trial, the district judge even acknowledged that this case was going to make them think twice about discriminating against deaf probationers and deaf persons in jail in the future. That's in the record on the last day of trial. So even the district court recognizes the public purpose and the protected class of underrepresented individuals that are being protected in this case, and what they did is they conflated the degree of success, which comes to the reasonableness of attorney's fees application, and they used that to deny all of the attorney's fees. And Sanchez explicitly and Grisham explicitly say that you cannot do that, that that's not a special circumstance under FAR. So that's where the court erred in this analysis. It conflated the two improperly. For you to win, do we have to formally adopt Justice O'Connor's factors? No, you don't have to formally adopt Justice O'Connor's factors, but whether you do the comprehensive circumstances test that this Fifth Circuit has applied in other cases, or whether you apply the O'Connor factors, the result is still the same. The significance of the public issue, the public policy, is what's critical in this case, and that's what gets us over the hump for attorney's fees, and that's what distinguishes us from FAR, because FAR no one can understand. So Judge Affrick, it looks like he's looking for a rule to help him with – for our majority, just saying, well, usually not. And he's suggesting that although a lot of courts have adopted it and we've averted to it, it's not an efficient – it's not an easy – you have to have a mini-trial. Those factors are sort of nebulous, and so therefore, as I read it, he seizes on the language in Grisham, the sentence that says, why don't we just look at what the primary objective is? If it's money and you get nothing injunctive, end of story, you never get a – is that a fair description of what he said the commendable approach would be? Well, he did look at that, but I think where he erred is just going all in, and he kind of assumed from the settlement discussions that that was – that's the objective of the lawsuit. But if you look at the whole lawsuit as a whole, if you look at our prayer for relief, we're asking for all the significant training and changes in video phone stuff that they implemented during the trial and after the trial. And then you look at – we've moved for a preliminary injunction. In all of our discovery responses, we were saying whatever the jury awards and damages, that's what we're seeking. That's in our complaint. That's in all of our discovery responses. In our closing arguments in front of the jury, we did not ask for a some certain. What do you do with Buchanan? What is that? What do you do with Buchanan? Sorry, Your Honor, I'm having trouble hearing you. I'm sorry. What do you do with Buchanan, B-U-C-H-A-N-A-N-O-N? What do we do with that case? Yes. The primary objective of the lawsuit must be defined by the forms of relief pursuant to a court-ordered resolution as opposed to the broader universal relief sought in an initial pleading. So I think Buchanan was looking at how you determine prevailing party status more so than whether someone is entitled to attorney's fees and special factors under FAR. And I think that's the distinction in this case. So we've said that and the district court in a footnote said don't mix up the two. Buchanan prevailing parties is not the same as for our special circumstances. Correct. And yet by the end of the opinion, Buchanan test becomes the one? Is that where you're identifying legal error? Correct, Your Honor. He applies Buchanan. He says I didn't order injunctive relief or any change in relationship. The order I entered is a $1 nominal damages order, and therefore applying Buchanan, they didn't get anything in terms of a public significant victory. It was a de minimis public. I think that's how he ends up using Buchanan. Right. And your answer to Judge Higginbotham was what? Was if you look at the cow and Guerrero, that even if in those cases they were seeking compensatory damages, they were seeking injunctive relief. They were seeking other forms of relief. But the court in those cases in those cases said we have to look beyond that. We have to look at the public deterrence, the public circumstances that are at issue here. And those those are things that the court can look at to overcome denial of attorney's fees. All right. Thank you. Thank you. Mr. Mr. Valley. May it please the court. On behalf of the state of Louisiana. This is a case in which plaintiffs sought as much as millions of dollars in compensatory damages against the state. I'm sorry. They had they had Mr. Melalee listed first. But you're you're going to go before him. Oh, I was under the impression. It doesn't it doesn't matter to me as long as the two of you are happy. But you're you're you're splitting your time with with him. Is that right? All right. OK, Mr. Again, this is a case in which plaintiffs sought as much as millions of dollars against the state. She didn't request nominal damages from the state. What you see is a judgment. One. She didn't get any permanent injunctive relief. She didn't get declaratory relief specifying what policies by the state violated the rights of Nelson RC. The district court who heard all of this evidence in trial and saw the conduct of the parties, he concluded that she is not entitled to any fees. We're asking that this court from the judgment. The starting point is, of course, for our case, which just Thomas who did that in a case like this where plaintiff filed suit to recover damages and received none. The only reasonable fees, usually none at all. Well, critical word is usual. Correct. So then then we need to find out when the sometimes exists. Right. Correct. And on numerous occasions since for our that holding has been addressed by this court. Most recently, Grisham versus the city forward taxes for that in Sanchez versus the city of Austin. Before that, Riley versus Jackson Police Department. In each of those cases, the plaintiff didn't only receive nominal damages, the plaintiff received. Permanent injunctive relief, and I believe in each case the court declaratory relief in the Grisham case. This court pointed out that any person who is subsequently affected by the city's action and objected to it, they could proceed with a national contempt instead of starting over and filing a lawsuit and going through all the discovery. In other words, the injunction stood or something. Which could be enforced against the city. There is no injunction against the state. There is nothing saying state. You cannot do the specific thing or you will be in contempt of federal court. Seems to me you heard my questions, though you might well prevail on remand. But it's hard to say you prevail when the district court's analysis is just the disparity in money or that the primary objective subjectively from the settlement was money. That does seem inconsistent with quite a lot of our precedent where injunctive relief wasn't obtained. The cases he cited, Pico and Guerra. How do you harmonize those? Because I think what his argument is, is sheriff's office in Louisiana are not going to deny interpreters or videophones when there's now been a jury verdict of intentional discrimination. If you do so, that's a pretty strong deterrent message. That's a public game. We first reviewed the Pico and Guerra decisions on Friday. In each of those cases, the district court awarded attorney's fees. And this court found that the court didn't abuse its discretion by awarding attorney's fees. Here they're asking this court to overturn the district court, find that the district court did abuse its discretion. Well, I think he corrected his position in oral arguments and said just send us back so we can get the district court to acknowledge there may have been a deterrent message. There could be a public value. The district court interpreted creatively, as I read it, Grisham and then pulled in Buchanan in spite of his rebuke that you shouldn't use prevailing party analysis to inform Farrar. So they're just saying in an effort for efficiency, well intended, the district court disregarded quite a bit of circuit and Supreme Court precedent, even the majority opinion in Farrar alone. I believe the district court cited Grisham for the proposition that the primary objective test was the Fifth Circuit test. There's been some discussion about whether the Fifth Circuit has or should adopt the O'Connor test from Farrar. The Fifth Circuit never has. It's had multiple opportunities to do so. It's chosen not to do so. Does your position depend on us disavowing those? I don't believe it does. Again, once you look at the public purpose, these cases, previous Fifth Circuit cases, there is a declaratory judgment or there is injunctive relief specifying precisely what it is that the government did that violated these individual rights. You don't have that here. What you have is a jury verdict that says did the state discriminate against Nelson Arce? Yes. That sounds like a pretty stiff deterrent message to me. If you don't give a deaf person an interpreter when you're explaining the conditions of relief, you'll be found to have intentionally discriminated against them. That's – I certainly wouldn't want to be in that position. That sounds like a public victory. Now, it may be outweighed by the fact they asked $2 million per dependent and get one, but that would be using the O'Connor factors. But as I read the district court opinion, it said we just don't. It's not – the Fifth Circuit's never said we do, and I want to use much more focus on monetary as a primary objective, and that would substantially change the rule. That would be a substantial change in the rule. I would agree with that. Okay, but you're endorsing that reduction of the Farrar usually test. You have to be, I think. I would agree with that. What other court's done that? I don't know of any court. Well, the Second Circuit's gotten a little closer to it, right? Don't they say it has to be a groundbreaking rule? Correct, and again, that's – when we're looking at what the relief is, in Grisham, the relief is clear that the city could not prevent any other religious people from passing out literature at a free public festival. That's clear. Sanchez, very clear. The city of Austin cannot do anything where they cannot adopt a rule specifically aimed at limiting First Amendment ability to protest on public property. This, again, the judicially sanctioned relief is the verdict. The verdict – and this goes back to Farrar and it even goes back to Justice O'Connor's concurrence – that verdict is regrettably obtuse. The verdict itself doesn't tell you anything. You would have to go back and you would have to – Like in Farrar, the verdict didn't tell you anything. It made no sense. The court said it's bizarre. It's like a bolt of lightning. My reading of this verdict is it makes a lot of sense. She just had no damages. I don't see anything confusing about if you don't get an interpreter, you're a deaf person, you're going to be liable. That's not what the verdict actually says. That is a reading of the verdict, but as far as using that verdict for public purposes, that is not in the verdict. That is not what the jury found. The jury did not make any specific finding of what it was they believed specifically discriminated against Nelson Arsenault. That was the private agreement that concluded the matter early on, correct? Sheriff Norman did or the state decided to give interpreters? The state, while the suit was pending, agreed to provide interpreters to Nelson Arsenault during additional probation meetings. There weren't actually any additional probation meetings before he passed away in which an interpreter was provided, but there was that agreement. The district court considered that, and the district court noted very specifically that I did not have any hand in that. I did not view on the merits whether it was required. There was no judicial imprimatur. That's all backdooring Buchanan into the Farrar analysis, and our precedent, Sanchez and Romaine, is clear. The two are distinct. So the more you say it determines – it depends on what the district court's court order belief is, the more that would be very problematic in the law. You can disagree. I'm just offering that as an opportunity for you to disagree with me. And again, and I hate to keep coming back to this, but – She asked for a lot. She got nothing. That is, at the end of the day, this was about money. There was even no available injunctive relief at the time of the trial. There was – she didn't plead for nominal damages. The old test might well mean you would win. It's just I'm not sure there's a case to be created and reduce the old test to what I see as sort of a variant of the first factor. But that's just my thinking. Well, under – again, under my reading of Fifth Circuit precedent, you would be creating new law. To apply the O'Connor factors? We'd create a split if we didn't. The O'Connor factors are set forth in a concurrence. It's not even really a Supreme Court case. Only Eighth Circuit's have followed it, so. My time's up. All right, thank you, Mr. Bernhardt. Mr. Mulally? May it please the Court, Jim Mulally on behalf of Sheriff Norman, who is now Sheriff of Kentucky. I don't know that I have much to add except to say I agree with Judge Higgins's frame of the issue. And I think that the entire – the sole issue on appeal here – That's a smart argument even if it's – The only issue is whether he abuses discretion in his application of Farrar, and he says in the district court, in his opinion, that he gave great weight to whether or not – what was sought in terms of damages and what was obtained. There are several footnotes where he made the rulings that certain other things weren't even relevant to that issue. Those are the problematic parts. I understand how you frame the issue, but yeah. So, I do. And I would say that I agree with co-counsel that the verdict itself in this case was somewhat obtuse. It does say that there was a violation under Title II of the ADA and the Rehabilitation Act. But that's where it stops and it's such action that the violation was intentional, and then there's no award of damages. There's only three interrogatories. With regard to my client, it's uncontested that the suit was brought after Mr. Arce's release from prison and that no prospective relief was ever available or sought. It is likewise true that the only thing that went to trial was the issue of propensitary monetary damages. So when it came time for trial, I think at one point I referred to it in the brief. There was somewhat of a shotgun method of liability as against my client. Was it the TTY machine? Although the district court disagreed with me, by the way. But at some point prior in the case, the district court had found, at least ostensibly, that the TTY machine met constitutional standards. Was it that that was allegedly constitutionally deficient? Was it the access to religious services? Was it the failure to provide an interpreter for purposes of explaining the inmate handbook? Was it discrimination on the basis of his disability and the administration's discipline? The verdict's unclear. The verdict simply says you violated the act, you did it intentionally, but you didn't cause any harm. So I think Farrar does come into play. Again, those issues – he didn't do the O'Connor analysis. So it may be an issue for a man if the court decides that maybe he should have considered those factors. I think, however, though, that if the factors were considered, it would inerr to the detriment of the plaintiff's position in that the verdict is obtuse. It doesn't provide any clear delineation of what it is you can or cannot do if you don't want to violate the rights of a deaf person in the prison. It's silence to that. And that was the third factor, the O'Connor factor. Also problematic is the first O'Connor factor because the plaintiff did not make a demand to the jury to close an argument. At any point there in the case, they didn't ask for any amount asserted in damages. The nominal amount, the $1, is not on the verdict form. It wasn't in an interrogatory submitted to them. So you have a verdict form that says you violated the act in some uncertain way, and it didn't cause them any damages. I don't know what deterrent effect that kind of verdict or judgment would have, and I think, therefore, the O'Connor factor is squarely applied. I agree with the court that the other cases cited, all the briefs in this case, are distinguishable in that there was some other form of prospective relief sought in court. Grisham, Sanchez, Hembrook, all of them. With regard to the newly submitted 28J cases, again, I think when applying the O'Connor factors to those, they're distinguishable. I mean the RICO case, the unpublished case, it was an officer suing for sexual discrimination, and there was a specific finding of sexual discrimination. I think that's – I mean it's commonly understandable. A verdict in favor of the claimant in that case saying don't sexually discriminate against people or you'll be held liable in federal court and be on the hook for attorney's fees. It has a deterrent effect. Likewise, Vieiro, same thing, unpublished opinion. That was an inmate excessive force case. Okay, so you're suing a finding that, as the court said, let's see, a finding of excessive force sent message that the unjustified use of force even when a prisoner is not severely injured is intolerable in a civilized society. I mean, again, I think that's pretty clear. It's not obtuse in any way, as Your Honor said. In this case, you don't have such a verdict. You don't have a judgment. And therefore, as a third contractor, I think it inherits the benefit of my time. Anyway, unless there's any other questions. All right, thank you. Thank you. Mr. Brzezinski, save time for rebuttal. First thing I want to respond to is the assertion that this was an obtuse decision that from the complaint to the jury instructions to our opening statements and to our closing arguments, it was extremely crystal clear that this case was about Nelson Arce's access to interpreters in his probation and in his jail. And for all the services that those provide to him. Is it undisputed that he was violated because he went to California? Is it undisputed that he violated his probation? That's why he was violated, is because he went to California. He violated his probation because he went to California. So does the record suggest that had he been told in a way that he could hear, he wouldn't even have gone to jail? Yes. So that's actually testimony that his father, unfortunately my client died. And this is something that's not been mentioned as to we weren't seeking injunctive relief. My client died a few months before trial. And there's testimony as to the fact that he went on a downward spiral because of the experience that he had at the jail, not having effective communication. So the experience you're describing is he gets disciplined for things in jail that he's saying he couldn't know were rules because he was deaf. Correct. And likewise, he only ended up in jail because he's saying he wasn't told he can't leave the state of Louisiana. Exactly, Your Honor. So this is a case about effective communication. And the things – communication is so important. This is such a high – when your liberty is at stake, when you're on probation, when you're in a jail, to be able to fully communicate, understand the rules, understand what is expected of you, and also be punished for not following those rules because of a lack of effective communication. That's a huge right that's being violated. And deaf people every day who don't get those – access to those services similarly face punishments like that because they're not understanding what's going on. So this is a significant right. And our client, had he been alive, had he not went on that downward spiral because of what happened to him and killed himself, would have standing for injunctive relief. And he could have gotten that. But it shouldn't be that his attorneys should not further the public interest of representing deaf people in these cases just because our client died at the hands of discrimination. I mean, so this is the significant stake at issue. And this is an unusual case as per far because it follows the legacy of cases that conferred a benefit to a clear group of underrepresented classes of people. I'm not sure, though, his death really. The chronology makes sense because he was still alive when he negotiated the private agreement. No, Your Honor. That was his estate. So he wasn't alive to do those negotiations. And those negotiations resulted in interpreters being given to deaf people across the – Oh, no. During the preliminary injunction, when we were seeking the preliminary injunction, he was alive during that time. But during the settlement negotiations as it pertains to the demand that's awfully cited, that was not – he was not alive for that. So he's essentially being punished for a private negotiation by his executrix as to what she thought the value was of the conferred right that he was violated. And so what Nelson R.C. wanted is to ensure that his rights were vindicated and to confer a public good for all the deaf community and make sure that what happened to him doesn't happen to any other deaf person ever again. And so this verdict makes clear – Are you saying – excuse me, Your Honor, but are you saying then that the primary relief sought was not monetary? Well, if he had been alive to express at trial his emotional distress that he personally experienced, he wanted to be able to express himself and the jury could award whatever it was that they wanted to award, as he stated in his sworn interrogatories, as he stated in his complaint. And they're just using this confidential settlement negotiation on behalf of the two clerks of his estate to say that he wasn't actually looking for injunctive relief or a public benefit. And I think that's completely wrong, and that court just overlooked all the objective factors of everything else that happened in the case and pulled from this one settlement conference that that was the sole relief that he was seeking. So would your position be that subjective intent is irrelevant altogether? Yes. Well, be careful, because I thought you were saying, no, it's very important for us to know what was in his mind. And then in a certain sense, Judge Affrick similarly is saying, well, I know what was in their mind because the settlement negotiations, they wanted a lot. Why would either of those two pieces of evidence be relevant? I didn't see that the O'Connor factors asks about the subjective intent of anybody. It says, did you get a big disparity? Let's look at it for public value and see if it's a significant legal issue. Yeah, I think I think I think that's how I think the court should reject that, you know, looking into a whole trial as to the subjective belief of people and to just look at the public benefit conferred. And and that's that's the test that should be looked at here. All right. Thank you. Submission and the court is in recess until nine o'clock tomorrow. All right.